UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KAREN MANNO,                                        :

               Plaintiff,                      :           07 Civ. 10360 (BSJ) (GWG)

     -v.-                                        :           REPORT AND
                                         RECOMMENDATION
TENNESSEE PRODUCTION CENTER, INC.,    :

               Defendant.                     :
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Karen Manno ("Manno") brings this action seeking damages for copyright

infringement against Tennessee Production Center, Inc. ("Tennessee Production").  Manno

alleges that Tennessee Production violated the Copyright Act through the unauthorized sale of

karaoke recordings that included her composition.  Because Tennessee Production failed to

answer the complaint in this case, the only remaining issues relate to damages.  For the reasons

that follow, Manno should be awarded $52,273.94 in statutory damages, costs, and attorney's

fees.

I.      BACKGROUND

      A.     Procedural History

       On November 15, 2007, Manno filed this suit seeking damages for copyright

infringement against Tennessee Production, which does business as "Chartbuster Karaoke."  See

Complaint, filed Nov. 15, 2007 (Docket # 1) ("Compl.").  When Tennessee Production failed to

answer, Manno moved for entry of default.  See Notice of Motion, filed Mar. 13, 2008 (Docket

# 5); Plaintiff's Memorandum of Law in Support of Her Motion for Entry of a Default, filed

Mar. 13, 2008 (Docket # 7); Affidavit in Support of Plaintiff's Motion for Entry of a Default,

filed Mar. 13, 2008 (Docket # 8).  After the entry of default was granted, see Order Granting

Entry of Default, filed Apr. 1, 2008 (Docket # 9), Manno moved for a default judgment, <u>see</u>

Notice of Motion, filed May 30, 2008 (Docket # 10); Affidavit in Support of Plaintiff's Motion

for Judgment By Default, filed May 30, 2008 (Docket # 11); Plaintiff's Memorandum of Law in

Support of Her Motion for an Order Granting a Judgment By Default Against Defendant

Tennessee Production Center, Inc., filed May 30, 2008 (Docket # 12).  The motion for a default

judgment was granted by means of a document labeled "Order and Default Judgment."  <u>See</u>

Order and Default Judgment, filed Sept. 19, 2008 (Docket # 14).  That Order contained

provisions ordering injunctive relief against Tennessee Production but referred the issue of

damages to the undersigned.  <u>Id.</u>

   The Court thereafter issued an Order setting forth the procedure to be used by Manno to

fix the monetary portion of her default judgment.  <u>See</u> Scheduling Order for Damages Inquest,

filed Sept. 29, 2008 (Docket # 15) ("Scheduling Order"), at 1-2.  The Order required Manno to

make certain submissions supporting her request for damages against Tennessee Production.  <u>See</u>

<u>id.</u>  The Order also gave Tennessee Production 30 days to respond.  <u>See id.</u> at 2.  The Order

further notified all parties that, absent a request from either side that the Court hold a hearing, the

Court would conduct any inquest regarding damages based solely upon the parties' written

submissions.  <u>Id.</u>

   Manno made submissions in accordance with this Order – and in accordance with a later

Order requiring further briefing on the issue of attorney's fees.  <u>See</u> Order, filed June 1, 2009

(Docket # 27).[1]  Tennessee Production submitted opposition papers opposing Manno's request

---

   [1]  <u>See</u> Plaintiffs' Proposed Findings of Fact and Conclusions of Law, filed Nov. 10, 2008
(Docket # 16) ("Proposed Findings"); Plaintiff's Reply Memorandum of Law in Further Support
of Her Motion for an Order Granting a Judgment by Default Against Defendant Tennessee

for statutory damages and contending that it is entitled to a jury trial.[2]

       B.       Facts

In light of Tennessee Production's default, Manno's properly-pleaded allegations, except those relating to damages, are accepted as true.  See, e.g., Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993).  Thus, the following statement of facts is taken largely from the complaint.

Manno co-authored, with non-party Gary Allan, a musical composition titled "The One." Compl. ¶ 7.  Manno co-owns with Allan the rights to the lyrics and music of this song.  Id. ¶ 8; see also Certificate of Registration (annexed as Ex. 1 to Compl.).[3]

Tennessee Production manufactures and distributes karaoke packages through retail, mail order, and internet sales.  Compl. ¶ 10.  Such packages typically include compact discs that contain graphics, known in the industry as "CD+G's."  Stovall Aff. ¶ 4.  These discs include non-original recordings of the words and music of famous songs, as well as song versions with music but no vocals.  Compl. ¶ 11.  Additionally, the discs can produce a visual image of the lyrics – sometimes alone and sometimes with graphics – that are synchronized to be shown on a screen in time with the music.  Id.  The purpose of the karaoke package is to enable buyers to sing in time with the music.  Id. ¶ 10.

_____

Production Center, Inc., filed Jan. 26, 2009 (Docket # 26) ("Pl. Reply"); Affidavit in Support of Plaintiff's Application for Attorney Fees, filed June 15, 2009 (Docket # 29) ("Abrams Aff.").

   [2]  See Memorandum of Law of Defendant in Opposition to Plaintiff's Proposed Findings of Fact and Conclusions of Law, filed Jan. 5, 2009 (Docket # 23) ("Def. Opp'n"); Affidavit of Lori Casteel, filed Jan. 5, 2009 (Docket # 21) ("Casteel Aff."); Affidavit of Norbert Stovall, filed Jan. 5, 2009 (Docket # 22) ("Stovall Aff.").

   [3]  In accordance with 17 U.S.C. § 501(b), the Court  required Manno to serve notice of this action with a copy of the complaint upon Allan.  See Order, filed July 2, 2009 (Docket # 30). Manno was unable to locate Allan, however.  See Affidavit of Karen Manno, filed July 15, 2009 (Docket # 31).

Tennessee Production has released several unauthorized recordings that contain Manno's composition "The One." Id. ¶¶ 12-13. According to Tennessee Production's records, the composition appeared in six separate CD+G's totaling sales of 5,028 units. Casteel Aff. ¶ 5.

II. DISCUSSION

    A. Law Governing Damages in Copyright Cases

Under the Copyright Act, a party may obtain either actual damages and profits or, if the party elects, statutory damages. See 17 U.S.C. § 504(a). Statutory damages are available in an amount of at least $750 per infringing work up to a maximum of $30,000 per infringing work. See id. § 504(c)(1). In addition, a court may award an enhanced recovery of up to $150,000 per infringing work if the infringement was willful. Id. § 504(c)(2). "Within these parameters, courts have broad discretion in setting an amount of statutory damages that effectuates the 'dual purposes of the Copyright Act – compensation of copyright owners and deterrence of potential infringers.'" Warner Bros. Entm't v. Carsagno, 2007 WL 1655666, at *3 (E.D.N.Y. June 4, 2007) (citation omitted). Here, Manno is seeking only statutory damages. Proposed Findings at 4.

    B. Right to a Jury Trial

Tennessee Production argues that it is entitled to a jury trial on the issue of damages. Def. Opp'n at 17. In support of this request, Tennessee Production relies on the language of Rule 55 which states that, upon default, "[t]he court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). Despite the reference to a "federal statutory right to a jury trial," courts have interpreted the language of Rule

55 as preserving a right to a jury trial only in the atypical situation where a statute specifically preserves the jury trial right even after a default.  See Frankart Distribs., Inc. v. Levitz, 796 F. Supp. 75, 76 (E.D.N.Y. 1992) ("By referring to a right to a jury trial as required by 'any statute,' Rule 55 presupposes that a default judgment extinguishes the constitutional right to a jury trial."); see also Graham v. Malone Freight Lines, Inc., 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules of Civil Procedure require a jury trial to assess damages after entry of default in these circumstances."); Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir.) ("the Seventh Amendment right to trial by jury does not survive a default judgment"), cert. denied, 419 U.S. 832 (1974); 5 Moore's Federal Practice ¶ 55.32[2][e] (3d ed. 2009) (collecting cases).  Tennessee Production points to no case suggesting that this interpretation of Rule 55 is incorrect or that any statute preserved its right to a jury trial even after a default.  Accordingly, Tennessee Production's request that Manno's application be adjudicated by a jury should be denied.

      C.    <u>Willfulness</u>

    As noted, the Copyright Act provides that a court may award an enhanced recovery of up to $150,000 per infringing work if the infringement was willful.  17 U.S.C. § 504(c)(2). "Willfulness in this context means that the defendant recklessly disregarded the possibility that its conduct represented infringement.  A plaintiff is not required to show that the defendant had knowledge that its actions constituted an infringement."  Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001) (internal quotation marks and citations omitted).  Also, "willful infringement may . . . be inferred from [defendant's] failure to appear and defend the action." Warner Bros. Entm't, 2007 WL 1655666, at *3 (citing Van Der Zee v. Greenidge, 2006 WL

44020, at *3 (S.D.N.Y. Jan. 6, 2006); Entral Group Int'l v. Honey Café on 5th, Inc., 2006 WL

3694584, at *6 (E.D.N.Y. Dec. 14, 2006)) (alterations in original).

Tennessee Production argues that it has shown good faith by virtue of a change in the

karaoke industry in the 1990's that required it to alter its previous practice of going to a single

agent to obtain required licenses. Def. Opp'n at 3-6. It also points to the fact that it has made

efforts to pay royalties to artists through the use of a program that tracks songs and licenses. Id.

at 3-6, 13; Casteel Aff. ¶ 4. But Manno's composition was registered in 2002, see Certificate of

Registration – long after the transition period during which Tennessee Production contends it

became aware that it had to obtain new licenses. Furthermore, Tennessee Production's

submission makes clear that it continues to sell products containing works for which it has no

license. Indeed, the "licensing coordinator" of Tennessee Production admitted in her affidavit

that Manno's song was "simply one of the numerous songs owned by individuals who own only

one or two songs in the catalog on which I have not been able to make arrangements for

licensing and royalty payments" and that the owners of these licenses "need to be located."

Casteel Aff. ¶ 7. Similarly, the company's Chief Executive Officer stated that the company was

"continuing its efforts to identify every publisher to become fully licensed," but that "we have

not been able to research, negotiate with, and execute licenses with each and every owner of

copyrighted songs." Stovall Aff. ¶ 10. These statements show that Tennessee Production is well

aware that it is making sales of "numerous" songs without having first secured the permission of

the owners. Indeed, there is nothing in the record to suggest that Tennessee Production might

"reasonably and in good faith believe[]," N.A.S. Imp., Corp. v. Chenson Enters., 968 F.2d 250,

252 (2d Cir. 1992) (citation omitted), that it had the right to sell Manno's own composition.

6

Taken together, these facts show that the Tennessee Production "recklessly disregarded the possibility" that selling a disk with Manno's song on it "represented infringement." Yurman Design, Inc., 262 F.3d at 112 (citation and quotation marks omitted).

Tennessee Production suggests that an evidentiary hearing is required to determine its willfulness because its intent represents an "issue of fact." Def. Opp'n at 13. But the Court had previously directed that any party seeking an evidentiary hearing was required to show "the reason why the inquest should not be conducted based upon the written submissions alone, including a description of what witnesses would be called to testify at a hearing and the nature of the evidence that would be submitted." Scheduling Order at 2. Tennessee Production does not explain which witnesses it seeks to call or what it would offer at a hearing. Additionally, in the context of an inquest following default, there is no requirement that a hearing be conducted at all. See, e.g. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) ("it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment") (citation omitted) (alteration in original); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

In any event, the Court has accepted as true all the facts contained in Tennessee Production's affidavits and has concluded that these facts themselves show wilfulness. Case law recognizes that willfulness "need not be proven directly but may be inferred from the defendant's conduct." N.A.S. Imp., Corp., 968 F.2d at 252; accord Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1010 (2d Cir. 1995) ("To show willfulness, [plaintiff] was not required to prove [defendant's] actual knowledge that it was infringing. Knowledge of infringement may be

constructive rather than actual . . . .").  Because Tennessee Production's own evidence

demonstrates that it acted willfully in infringing on Manno's copyright, Manno is entitled to up

to $150,000 in statutory damages.

       D.    <u>Number of Awards</u>

Generally under the Copyright Act, "the total number of awards of statutory damages that

a plaintiff may recover in any given action depends on the number of works that are infringed

and the number of individually liable infringers, regardless of the number of infringements of

those works." <u>WB Music Corp. v. RTV Commc'n Group, Inc.</u>, 445 F.3d 538, 540 (2d Cir. 2006)

(citations omitted).  In other words, "[section] 504(c)(1) disassociates the award of statutory

damages from the number of infringements by stating that 'an award' (singular tense) of

statutory damages is available for 'all infringements involved in the action' regarding any one

work." <u>Id.</u>

Manno argues, however, that Tennessee Production's "reprinting of the lyrics of

plaintiff's musical composition constitutes a separate infringement under the Copyright Act," Pl.

Reply at 4, and that she is therefore entitled to two statutory damage awards.  But the Copyright

Act treats a CD+G disk containing both music and lyrics simply as an "audiovisual work" under

the Copyright Act, <u>ABKCO Music, Inc. v. Stellar Records, Inc.</u>, 96 F.3d 60, 65 (2d Cir. 1996),

and the statutory definition of "audiovisual work" confirms that it already consists of both

"images" – in this case, the lyrics – "together with accompanying sounds" – the music, <u>see</u> <u>id.</u>

(quoting 17 U.S.C. § 101).  The fact that a separate copyright may be obtained for lyrics does not

alter the fact that the actual infringement here was of a single work: the song identified in the

Copyright Registration, which explicitly references both music and lyrics.  <u>See</u> Copyright

Registration.

Manno points to no case that gives two awards – for the music and lyrics – where there has been infringement of a single work.  Rather, she cites to cases that stand only for the unrelated proposition that a compulsory license for use of a phonorecord (not at issue in this case) does not allow the license-holder to also sell karaoke CD+G's because karaoke CD+G's are audiovisual works, see ABKCO Music, Inc., 96 F.3d at 64-65; Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 528-29 (9th Cir. 2008), and more generically for the proposition that song lyrics "enjoy independent protection" as "literary works" without any discussion of what impact this would have on damages, see Zomba Enters., Inc. v. Panorama Records, Inc., 491 F.3d 574, 578 n.1 (6th Cir. 2007).

The remaining case cited by Manno, Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 161 F.2d 406 (2d Cir. 1947), see Pl. Reply at 3, similarly does not support the proposition that lyrics and music of a composition constitute separate works for purposes of a statutory damage award.  Indeed, the case appears to stand for the opposite proposition, inasmuch as the court stated:

> The words and music of a song constitute a 'musical composition' in which the two contributions merge into a single work to be performed as a unit for the pleasure of the hearers; they are not a 'composite' work, like the articles in an encyclopedia, but are as little separable for purposes of the copyright as are the individual musical notes which constitute the melody.

Shapiro, Bernstein, 161 F.2d at 409.

In sum, the CD+G with Manno's song, containing synchronized lyrics and video, constitutes the only "work" for which Tennessee Production is liable for infringement.  See 17 U.S.C. § 504(c)(1).  Therefore, the maximum that Manno can recover is limited to $150,000 for

this infringement.

      E.      Effect of Co-Ownership

      Manno asserts that she is entitled to 100% of any statutory damage award despite the fact that there is a co-owner of the copyright.  Pl. Reply at 2-3.  While "a joint owner is not required to join his other co-owners in an action for infringement," where one co-owner acts alone in bringing suit, the co-owner cannot affect the rights of the other co-owners who are not parties to the action.  Davis v. Blige, 505 F.3d 90, 99, 103-04 (2d Cir. 2007).  The Second Circuit has held that recovery in a copyright case is "confined to the [plaintiff co-owner's] own part; that is to say, to its own actual damages, to its proper share of any statutory damages, and to its proper share of the profits."  Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 268, 270 (2d Cir. 1944); accord Calloway v. Marvel Entm't Group, 1983 WL 1152, at *4 (S.D.N.Y. Dec. 23, 1983); 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.03 (2009).  This is consistent with the principle that co-owners of a copyright are to be treated as "tenants in common" and that a co-tenant cannot extinguish interests of other co-tenants.  See Davis, 505 F.3d at 102.  Thus, "'[o]ne tenant in common can settle for or release his interest in . . . personal property, but he cannot settle for or release the interest of his co-tenants.  If one tenant in common should settle for his portion of the damages before action, the other may sue without joining him.'"  Id. (citation omitted).

      Manno points to the following language in Kamakazi Music Corp. v. Robbins Music Corp., 534 F. Supp. 69 (S.D.N.Y. 1982), for the proposition that she can recover 100% of statutory damages:

      There is nothing that can be discerned in the statutory scheme to require that
      recovery by one owner of a particular exclusive right precludes the recovery for

10

infringement by the owner of another exclusive right, as long as the infringer's
liability on these statutory damages does not exceed the maximum amount
provided in Section 504(c).

See id. at 75; Pl. Reply at 2. But this quotation directly supports the notion that the infringer can

only be liable for one maximum statutory damage award, even if there are multiple co-owners.

In any event, Edward B. Marks Music Corp. makes clear that a co-owner of a copyright is

limited to its "proper share" of any statutory damage award. 140 F.2d at 269.[4]

Manno has not specified what her ownership interest is in the property and has not

controverted Tennessee Production's contention that Manno has a one-half interest. See Def.

Opp'n at 8-9. Accordingly, Manno's share of statutory damages should be limited to 50%. See

Cmty. for Creative Non-Violence v. Reid, 846 F.2d 1485, 1498 (D.C. Cir. 1988) (where co-

ownership exists "[i]n the absence of an agreement specifying otherwise, any profits earned are

to be divided equally"), aff'd on other grounds, 490 U.S. 730 (1989).

F.      Amount of the Statutory Damage Award

To set the amount of the statutory damage award, courts generally look to the following

factors under the Copyright Act: (1) "the expenses saved and the profits reaped," (2) "the

revenues lost by the plaintiff," (3) "the value of the copyright," (4) "the deterrent effect on others

besides the defendant," (5) "whether the defendant's conduct was innocent or willful,"

(6) "whether a defendant has cooperated in providing particular records from which to assess the

value of the infringing material produced," and (7) "the potential for discouraging the

defendant." Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986);

---

[4] Although Edward B. Marks Music Corp. was decided before the 1976 revisions to the
Copyright Act, there is no reason to conclude its holding on this point was affected by the
revisions.

11

accord Eros Entm't, Inc. v. Melody Spot, L.L.C., 2005 WL 4655385, at *10 (E.D.N.Y. Oct. 11, 2005).  In the context of copyrighted music, courts often focus on the royalties that the infringer avoided paying.  See Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332-33 (N.D.N.Y. 2008); Broad. Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (collecting cases).

In the present action, Tennessee Production contends – and Manno has not contradicted – that royalties for karaoke CD+G units sold typically range between 12 cents and 15 cents. Stovall Aff. ¶ 11.  A total of 5,028 units containing Manno's song were sold.  Casteel Aff. ¶ 5. Thus, using the upper royalty range of 15 cents per unit, the total royalties due to the copyright holders would be $754.20.  Additionally, the licensor typically receives a one time $150.00 "fixing fee" for each CD+G compilation in which the song is placed.  Stovall Aff. ¶ 11.  Here, Manno's composition appeared in six of Tennessee Production's CD+G's.  Casteel Aff. ¶ 5. Thus, the total fixing fees due to the copyright holders would have been $900.00.  In sum, the total lost profits to the copyright holders, counting both royalties and fixing fees, is $1,654.20. Because Manno is entitled only to half of this amount, her lost profits are $827.10.

With respect to the other factors, no information has been provided as to any revenues lost by Manno or the value of the copyright.  We have already determined that the defendant's conduct was willful, and thus this factor weighs in favor of a larger award.  As to whether Tennessee Production has cooperated in providing records from which to assess the value of the infringing material produced, Manno argues that Tennessee Production's default "insulated" it from discovery and that it should not "be rewarded for its default by allowing it the opportunity to submit self-serving estimates of plaintiff's actual damages which it was unwilling to submit to

12

the process of discovery." Pl. Reply at 5-6.  Rule 55, however, specifically contemplates that the defaulting party will have the opportunity to address the issue of damages.  Despite being given the opportunity to request a hearing, Manno did not request one.  And even if the default insulated Tennessee Production from discovery prior to its filing a notice of appearance, Manno has not shown that she made any effort to conduct discovery – or that any request for documents was rebuffed – after Tennessee Production appeared in this action by counsel.  While Manno suggests that Tennessee Production has not "reliably disclosed" information on sales and has provided only "self-serving estimates" of plaintiff's damages, Pl. Reply at 5-6, she does not provide any admissible evidence suggesting that Tennessee Production's affidavits are inaccurate.  Accordingly, the Court does not believe that this factor weighs against Tennessee Production.  Nor does it believe that any information Tennessee Production has submitted regarding damages should be disregarded.

What remains is the deterrent effect of an award on other potential infringers and the potential for discouraging the defendant from future similar conduct.  The Court views these factors as favoring a significant award.  As one court has stated, "to put infringers 'on notice that it costs less to obey the copyright laws than to violate them,' . . . a statutory damage award should significantly exceed the amount of unpaid license fees."  R Bar of Manhattan, Inc., 919 F. Supp. at 660 (citation omitted).  Case law reflects many instances in which courts have set awards at several times the amount of lost profits.  See Golden Torch Music Corp. v. Pier III Café, Inc., 684 F. Supp. 772, 774-75 (D. Conn. 1988) (awarding $8,000 in statutory damages where licensing fees would have been $1,490); R Bar of Manhattan, Inc., 919 F. Supp. at 660 (awarding $12,000 in statutory damages where licensing fees would have been $2,245); Broad.

Music, Inc. v. Melody Fair Enters., Inc., 1990 WL 284743, at *4 (W.D.N.Y. July 31, 1990) (awarding $70,000 in statutory damages of dollars where licensing fees would have been about $17,000).

  After considering all the factors, the Court believes an award of $5,000 is appropriate. Given the relatively small amount of lost profits involved, a lower multiple would be insufficient to deter Tennessee Production from its practice of infringing first and seeking permission later. In light of the fact that Tennessee Production must bear a significant cost in the form of Manno's attorney's fees (see section II.G below), the Court does not believe a higher award is necessary.

  Manno's argument that she should be awarded the maximum amount of statutory damages, Pl. Reply at 5-7, is not supported by the case law she cites. In Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233 (E.D. Cal. 2008), the court had no evidence from the defendant on which to base a judgment and thus could not properly consider actual damages. Id. at 1238. In National Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458 (S.D.N.Y. 2001), the court found that the defendant had committed infringement in defiance of a court ruling and also noted that it had previously been found to have committed infringement. Id. at 479 & n.19.

  G.    Attorney's Fees

  In an action under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations [the Court has] identified.'" Fogerty v. Fantasy, 510 U.S. 517, 534 (1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). These "considerations" include

14

factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . . so long as such factors are faithful to the purposes of the Copyright Act." Id. at 534 n.19 (citation and internal quotation marks omitted). Nonetheless, the award may not "add[] any additional amount by way of penalty" to the losing party. Crescent Publ'g Group, Inc. v. Playboy Enters., Inc., 246 F.3d 142, 151 (2d Cir. 2001).

In light of Tennessee Production's willful disregard of Manno's copyright interests, the need to compensate Manno for her expenses in pursing this action, and the importance of deterring both Tennesse Production and others from engaging in copyright violations, the Court concludes that Manno is entitled to an award of attorney's fees and costs.  Manno seeks $47,273.94 in attorney's fees and costs.  See Abrams Aff. ¶ 8.  Tennessee Productions has not challenged the number of hours expended by Manno, the hourly rates sought by her attorneys, or any other aspect of the amount claimed in Manno's attorney's fee application.  Accordingly, Manno should be awarded the amount she seeks.

H.    Injunctive Relief

Manno has already been granted injunctive relief as reflected in the Court's prior order. See Order and Default Judgment, filed Sept. 19, 2008 (Docket # 14).  Accordingly, it is not necessary to issue any further orders regarding injunctive relief.

Conclusion

For the foregoing reasons, Manno should be awarded judgment against the defendant in the amount of $52,273.94 in statutory damages, costs, and attorney's fees.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Barbara S. Jones, and to the undersigned, at 500 Pearl Street, New York, New York 10007.  Any

request for an extension of time to file objections must be directed to Judge Jones.  If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: July 16, 2009
      New York, New York

                                      GABRIEL W. GORENSTEIN
                                      United States Magistrate Judge